```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION

KHALED FATAYER,

                    Plaintiff,

vs.                                  Case No.   2:07-cv-527-FtM-29DNF

LINDA SWACINA, DISTRICT DIRECTOR,
UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICE (CIS), DISTRICT
OF FLORIDA; EMILIO T. GONZALEZ,
DIRECTOR, CIS; MICHAEL CHERTOFF,
SECRETARY, UNITED STATES DEPARTMENT
OF HOMELAND SECURITY (DHS); ALBERTO
GONZALEZ, ATTORNEY GENERAL, UNITED
STATES DEPARTMENT OF JUSTICE (DOJ),

                    Defendants.
_____
```

**OPINION AND ORDER**

This matter comes before the Court on defendants Linda Swacina, Emilio T. Gonzalez, Michael Chertoff, and Alberto Gonzalez's Motion to Dismiss on Mootness Grounds or, in the Alternative, for Remand (Doc. #19) filed January 2, 2008. Plaintiff Khaled Fatayer filed an Opposition to Motion to Dismiss (Doc. #20) on January 11, 2008.  For the reasons set forth below, the Court finds that defendants' motion should be granted.

**I.**

Plaintiff Fatayer, a citizen of Jordan, was lawfully admitted to the United States for permanent residence on November 2, 1995. (Doc. #2, ¶ 1.)  On December 23, 2003, plaintiff submitted an Application for Naturalization (Form N-400) to the United States

Immigration and Naturalization Service, the precursor to the agency now known as the United States Bureau of Citizenship and Immigration Services (CIS). (Doc. #2, p. 1.) Plaintiff appeared for his initial naturalization examination on September 22, 2004, at which time the examining CIS officer determined that plaintiff was unable to demonstrate his knowledge of U.S. History and Civics. (Doc. #15-2, p. 3.) A reexamination interview was conducted approximately a year and a half later, on April 20, 2006. (Id.) After completing his second interview, plaintiff made several inquiries to CIS on the status of his application; CIS responded that its delay in adjudicating plaintiff's application was due to pending Federal Bureau of Investigation (FBI) background checks. (Doc. #2, p. 3.)

On June 29, 2007,[1] approximately three and a half years after plaintiff first initiated his application and approximately a year after he completed his second interview, plaintiff filed a Petition for Hearing on Naturalization Application (the "Petition" or "Complaint") (Doc. #2) pursuant to Section 1447(b) of the Immigration and Nationality Act (INA),[2] requesting that the

---

[1] The complaint was originally filed in the U.S. District Court for the Southern District of Florida on June 29, 2007 (Case No. 1:07-cv-21660-KMM; Doc. #1) and transferred to this Court in the Middle District of Florida on August 20, 2007 (Doc. #2).

[2] 8 U.S.C. § 1447(b) (2006) provides, in relevant part, that "If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the
(continued...)

district court exercise jurisdiction over and adjudicate his N-400 application, which had been pending in excess of 120 days; or in the alternative, that the Court compel CIS to immediately adjudicate plaintiff's N-400.

On September 17, 2007, CIS issued a Request for Evidence in the administrative proceedings seeking documentation, by October 17, 2007, pertaining to the following incidents it discovered during the course of plaintiff's background check: a copy of the court's disposition of a Las Vegas, Nevada, case for Fraud/Insufficient Funds Check filed against plaintiff in October 2000; police or arrest records pertaining to an outstanding arrest warrant issued in Las Vegas, Nevada, on October 4, 2000, in connection with the same case; and evidence of any applicable completion of sentence or payment of fines. (Doc. #15, p. 2.; Doc. #15-2, pp. 3, 7; Doc. #15-3.) After pursuing these records, plaintiff submitted the following to CIS: a copy of a fax sent by plaintiff to the Clark County Court in Las Vegas, Nevada, dated September 24, 2007, requesting information pertaining to the Fraud/Insufficient Funds Check case; a document from the Clark County Courts in Las Vegas, Nevada, dated September 26, 2007, certifying that the court was unable to find any records for the

---

[2](...continued)
applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter."

Fraud/Insufficient Funds Check case; a fax cover sheet from the Chief Deputy District Attorney of Clark County to plaintiff, dated October 15, 2007, advising that full bail had been received on the outstanding arrest warrant, that the case was dismissed on May 23, 2006, and that the Clark County District Attorney had closed the case and was awaiting a certified copy of the court minutes from the dismissal; and a letter from the Bad Check Diversion Unit of the Clark County District Attorney to plaintiff, dated October 17, 2007, stating that the Unit was unsuccessful, after many attempts and requests, in obtaining the certified court minutes of the dismissal of plaintiff's case. (Doc. #15-3, pp. 14, 16-17, 20.) On or about October 17 and 25, 2007, plaintiff's counsel communicated with CIS by electronic mail regarding the results of his attempts to gather the documents requested by CIS. (Doc. #15-2, pp. 18-19.)

On October 25, 2007, while the case was pending before this Court, CIS denied plaintiff's N-400 application for "Poor Moral Character (False Testimony, Lying)." (Doc. #15, p. 3; Doc. #15-2, pp. 2-3.) In its decision, CIS cited plaintiff's failure to provide "certified copies of the police arrest record and the certified final court disposition for the arrest" for the Fraud/Insufficient Funds Check case, as well as plaintiff's failure to disclose information or provide documentation as to an arrest on February 23, 2000 in Lee County, Florida, for Resisting Arrest Without Violence (in which adjudication was ultimately withheld and

-4-

plaintiff sentenced to two days time served). (Doc. #15-2, pp. 3, 7.) Additionally, CIS stated that, because the outstanding warrant for plaintiff's Fraud/Insufficient Funds Check case "was not dismissed until May 23, 2006, almost six years after the original date of the warrant," plaintiff's application was denied due to his "lack of good moral character during the statutory period." (Id.) Plaintiff claims that the Fraud/Insufficient Funds Check case was the result of a misunderstanding, of which he was unaware until CIS brought it to his attention, and that "as soon as Mr. Fatayer was aware of the outstanding warrant [in that case], he paid the full amount at once." (Doc. #15, ¶ 3.)

Plaintiff filed an administrative appeal of the denial of naturalization on November 21, 2007, which remains pending.

## II.

In his initial Petition, Plaintiff invoked the Court's jurisdiction under 8 U.S.C. § 1447(b), as more than 120 days had passed since his second examination, without a determination from CIS. On November 21, 2007, after his application was denied administratively, Plaintiff filed a Supplemental Complaint (Doc. #15), asserting that CIS denied plaintiff's N-400 without allowing plaintiff to "rebut the evidence prior to the making of the decision," that CIS's denial of his application was "arbitrary, capricious, not in accordance with the law, and constitute[d] an abuse of discretion," and that CIS denied plaintiff's application as retaliation for filing this lawsuit. (Id.) In his Supplemental

Complaint, plaintiff requests that the Court decide his N-400 application or, in the alternative, order CIS to issue findings of fact and conclusions of law supporting their denial of his naturalization application. (Id. at p. 3.)

Defendants move for dismissal (Doc. #19) on the ground of mootness because CIS has made a final adjudication as to plaintiff's application. In the alternative, defendants request that the Court remand plaintiff's N-400 application to CIS for final determination. Defendants argue that CIS is best positioned and equipped to analyze immigration matters, evaluate the results of its own investigation, and to adjudicate plaintiff's application. (Id. at pp. 7-8.) Defendants further argue that remand to CIS allows plaintiff to retain his rights to administrative appeal and judicial review because plaintiff may still seek further administrative review and, ultimately, *de novo* judicial review. (Id. at p. 8.)

Plaintiff, opposing defendants' motion to dismiss (Doc. #20), argues that, "once the suit was filed under 8 U.S.C. § 1447(b), the district court assumed *exclusive* jurisdiction over the naturalization application, and CIS lost the authority to decide the case." (Id. at p. 3 (emphasis in original)). Plaintiff further asserts that the Court should decide the case itself, because remanding the case back to CIS "would defeat the purpose of the whole law suit," that CIS "already denied [p]laintiff's

-6-

application as retaliation for having brought this lawsuit," and that "if the case is remanded, then the denial is final." (Id. at pp. 5-6.) Plaintiff also argues that the Court should review CIS's decision under the rubric of the Administrative Procedures Act, 5 U.S.C. §§ 702 et seq., to determine whether its decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. (Id. at p. 6.) Plaintiff discusses the substantive merits of his application for naturalization, asserting that he qualifies for citizenship under Section 316 of the INA because he satisfies the "good moral character" standard. (Id. at pp. 7-9.)

The issue of mootness depends on whether a federal district court has exclusive or concurrent jurisdiction, vis-à-vis CIS, over matters brought before it pursuant to 8 U.S.C. § 1447(b). If the Court shares concurrent jurisdiction, then the decision plaintiff seeks to compel has already been made by CIS while the federal court case was pending and plaintiff's federal court case is moot. If the Court has exclusive jurisdiction, the CIS decision was made without authority, is a nullity, and the matter remains a live controversy.

This question has not yet been addressed by the Eleventh Circuit. The two Circuit courts to address the issue, the Ninth Circuit[3] and the Fourth Circuit,[4] have both interpreted § 1447(b)

---

[3]United States v. Hovsepian, 359 F.3d 1144 (9th Cir. 2004)
(continued...)

to grant the district courts exclusive jurisdiction (and to therefore strip CIS of jurisdiction), while the interpretations of the district courts remain divergent on the issue.[5] See Bustamante v. Chertoff, 533 F. Supp. 2d 373, 375 (S.D.N.Y. 2008); see also Kurtis A. Kemper, Annotation, Construction and Application of 8 U.S.C.A. § 1447 Governing Hearings on Denials of Applications for Naturalization, 2006 A.L.R. Fed. 2d 11 (2006) (collecting cases).

The Court interprets § 1447(b) to confer concurrent jurisdiction upon the district court and CIS. In reaching this decision, the Court found the analysis set forth by the district court in Bustamante, 533 F. Supp. 2d 373, to be most persuasive. In the present case, both CIS and plaintiff participated in the administrative process after plaintiff filed his lawsuit in federal

---

[3] (...continued)
(holding that § 1447(b) grants exclusive jurisdiction to district court, divesting CIS of jurisdiction), rev'g en banc 307 F.3d 922 (9th Cir. 2002).

[4] Etape v. Chertoff, 497 F.3d 379 (4th Cir. 2007) (finding that § 1447(b) grants exclusive jurisdiction to district courts, divesting CIS of jurisdiction).

[5] See, e.g., Izraileva v. Chertoff, 2007 WL 3120255 (M.D. Fla. 2007) (finding that § 1447(b) grants exclusive jurisdiction to district court and therefore, strips jurisdiction from CIS); Zaranska v. U.S. Dep't of Homeland Sec., 400 F. Supp. 2d 500 (E.D. N.Y. 2005) (same); Castracani v. Chertoff, 377 F. Supp. 2d 71 (D.D.C. 2005) (same;) Al-Saleh v. Gonzales, 2007 WL 990145 (D. Utah 2007) (finding that § 1447(b) grants concurrent jurisdiction to the district court and CIS and therefore, CIS's positive determination of applicant's N-400 application rendered the case moot); Perry v. Gonzales, 472 F. Supp. 2d 623 (D.N.J. 2007) (same); Farah v. Gonzales, 2006 WL 1116526 (D. Minn. 2006) (same, but implied, rather than explicitly found, concurrent jurisdiction).

court.  CIS issued a decision on plaintiff's N-400 application on October 25, 2007, and plaintiff has filed an administrative appeal before an immigration officer pursuant to 8 U.S.C. § 1447(a) and 8 C.F.R. § 336.2 (Doc. #15-3, pp. 1-8).  It simply makes no sense to interpret a statute intended to speed up the process to mean that the administrative process must come to a grinding halt upon filing of a federal lawsuit.  The Court finds that CIS had the authority to issue its decision, and therefore the federal court case is moot.

Alternatively, even if the court had exclusive jurisdiction it would exercise its authority under § 1447(b) by remanding the matter to CIS to complete the administrative process.  The administrative agency is in a better position to adjudicate immigration matters, and is obviously now in a position to do so.  All of the issues here can be pursued via the administrative process and indeed, plaintiff has filed an administrative appeal before an immigration officer pursuant to 8 U.S.C. § 1447(a) and 8 C.F.R. § 336.2 addressing, among other things, the issue of retaliation plaintiff raised in the Supplemental Complaint.  (See id. at p. 3.; Doc. #15-3 pp. 1-8.)  If such administrative appeal is denied, plaintiff may again file suit with the district court for a de novo review of his application, pursuant to 8 U.S.C. § 1421(c).  See, e.g., Hovsepian, 359 F.3d at 1162 ("Under § 1421(c), the district court has the last word with respect to denied

applications, by conducting its own hearing and reviewing the application de novo.").

Accordingly, it is now

**ORDERED**:

1. Defendants' Motion to Dismiss on Mootness Grounds or, in the Alternative, for Remand (Doc. #19) is **GRANTED** and the Petition (Doc. #2) and Supplemental Complaint (Doc. #15) are **DISMISSED** without prejudice.

2. The Clerk is further **directed** to enter judgment accordingly, terminate all pending motions and deadlines and close this case.

**DONE AND ORDERED** at Fort Myers, Florida, this __15th__ day of September, 2008.

_/s/ John E. Steele_
JOHN E. STEELE
United States District Judge

Copies:
Counsel of record